BEHZAD RAJABI
60 N. ANDERSON
CLOVIS CA
93612

# UNITED STATES DISTRICT COURT
# DISTRICT OF CALIFORNIA

FILED

JAN 1 9 2011

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY CLERK

| | |
|---|---|
| **BEHZAD RAJABI,** | ) |
| | ) CASE NO: 1:11-CV-00090-OWW-SKO |
| Plaintiff, | ) JUDGE: |
| vs. | ) |
| | ) |
| **PSA AIRLINES INC. ET AL** | ) COMPLAINT |
| | ) JURY TRIAL DEMANDED |
| And | ) |
| **JEFFREY GILLIAM, DARREN HARRIS, MATTHEW CHRISTNER, RANDALL FUSI, JOSEPH ROSE, BRUCE KUMKE, JASON KYLE** | ) |
| Defendants, | ) |

## I. INTRODUCTION

This is an action arising under state and federal law for national origin-based termination and harassment, which was a part of a pattern and practice of national origin discrimination against foreign born pilots, and other related actions on the part of Defendants, including retaliation for complaining of national origin discrimination, in violation of 42 U.S.C. 2000e *et. seq.*, and California public policy. These acts of discrimination took place at locations throughout the United States, and in particular in Montreal Canada, Dayton, Ohio, St. Louis, Missouri, Charlotte North Carolines.

1

## II. PARTIES

1. Plaintiff Behzad Rajabi (hereinafter "Plaintiff") is a citizen of the United States and at all relevant times was a resident of California. Plaintiff had been employed as a commercial pilot since 1999 and was a First Officer for PSA from 2004 to 2008. In his years with PSA Plaintiff safely flew over 3200 hours.

2. Defendant PSA Airlines, Inc. (hereinafter "PSA") is a Pennsylvania corporation and a wholly owned subsidiary of US Airways Group.

3. PSA has over 500 employees and is and has at all relevant times been doing business in the state of Ohio. Defendant PSA has its corporate headquarters in Vandalia, Ohio, at the Dayton International Airport. It operates under the name of US Airways Express.

4. Defendant PSA is an employer within the meaning of Title VII of the Civil Rights Act of 1964 (hereafter "Title VII "), 42 U.S.C. 2000e *et.seq*.

5. All the acts alleged herein were duly performed by and/or are attributable to Defendant, acting by and through their agents and employees.

6. Defendant is responsible for, or controlled, directed or ratified the discriminatory activity and is responsible for the unlawful actions taken against and/or suffered by Plaintiff.

7. Plaintiff alleges that each named Defendant negligently, willfully, intentionally, maliciously, recklessly or otherwise caused, directed, allowed or set in motion the unlawful and retaliating events affection Plaintiff. ............

## III. JURISDICTIONAL STATEMENT

8. Plaintiff herby in bona fide contention that each allegation is true, brings this action pursuant to the common law of the state of California, and 42 U.S.C. 2000 e *et. seq*., and 42 U.S.C. 1981a.

## IV. FACTUAL STATEMENT

9. Plaintiff was born in Iran and moved to the United States in 1987. Plaintiff speaks English well but with a strong accent.

2

10. Plaintiff Rajabi has been flying since 1999 and has logged almost 7500 hours. During that time he had no FAA violations or letters of warning.

11. Plaintiff Rajabi is the holder of an Airline Transport Pilot certificate with FAA ratings: Airplane Multiengine Land (ATP) with Airbus 320, Boeing 737, CL-65 (Canadair Regional Jet) type rating as second in command (SIC), Instrument rated, Certified Flight Instructor (CFI), Certified Flight Instructor Instrument (CFII), Certified Flight Instructor Multiengine (MEI) and Ground Instructor certificate with advanced ratings issued in 1997 and 1000 hours of flight training.

12. Plaintiff Rajabi was employed by PSA from April 2004 to April 2008 as a pilot based in Philadelphia for a year and shortly after that at the Charlotte, North Carolina location.

13. As a pilot, Plaintiff has a variety of duties, including the safe operation of the planes to which he was assigned.

14. Plaintiff was employed as a First Officer, meaning one of two pilots assigned to operate the planes on which he flew. During the course of plaintiff's employment with PSA, he flew over 3200 hours as a first officer on two different aircraft – CRJ 200 and CRJ 700. Plaintiff received excellent oral performance evaluations and was repeatedly praised by his managers (Chief Pilot) and Captains he flew with for his safe and efficient work as a pilot. Of the 3200 hours, 1600 hours were flown with Plaintiff as flying pilot (FP). The other 1600 hours Plaintiff was the non- flying pilot (NFP).

15. Beginning in or about September 2007, Plaintiff Rajabi applied for promotion to the position of Captain.

16. Plaintiff was well qualified for the position of Captain. He met and exceeded all entrance requirements for the position, which included passing a "ground school" conducted by PSA in Dayton Ohio, where written tests were completed by the Captain applicants, and passing oral examinations with Company Check Airman and then with an FAA Examiner.

17. In evaluating Plaintiff's applications for promotion to the position of Captain, PSA was required to follow published FAA regulations to follow well established procedures. These procedures included but were not limited to submitting each Captain applicant to a check ride, which is a simulated ride on one of US Airways aircraft simulators. These simulators closely resemble and mimic operational characteristics of the aircraft type and model to be flown.

18. From 2007 to 2008, Plaintiff Rajabi submitted to four checkrides as a part of his effort to be promoted to the position of Captain. The first two checkrides took

3

place in Montreal, Canada and the other two checkrides took place in St. Louis, Missouri.

19. Objective criteria show that Plaintiff was unfairly denied the opportunity to successfully complete these checkrides. The first of these checkrides took place in September 2007 without plaintiffs knowledge. Defendant PSA and its Aircrew Program Designee (APD) Jeffrey Gilliam presented a checkride to Plaintiff Rajabi without informing Plaintiff of this or preparing him for the checkride. It was the Plaintiff's belief the session was to be an additional simulator session before his checkride. Mr. Gilliam failed Plaintiff on this checkride. Defendants did so because they did not want foreign born pilots, especially those with strong accents, acting as Captains of their planes. Mr. Gilliam, in a previous conversation asked Plaintiff Rajabi where he was from and also stated that his accent was strong after being in the US for so long. He also initiated a conversation with Plaintiff Rajabi about the hostage crisis incident in Iran.

20. Another example of the discriminatory treatment to which Plaintiff was treated includes Plaintiff being placed on suspension for no reason and not being paid for one month. When Plaintiff asked about this, he was informed he was suspended because he walked out of the first checkride session. Plaintiff denies this and was told by Mr. Gilliam that he should go home after the first checkride session.

21. In October 2007, Plaintiff was asked to retest for a first officer checkride and successfully passed. Plaintiff continued his employment with PSA as a first officer. Plaintiff was given more line checks than other pilots. In one of the Plaintiff's line check, the check airman pulled a circuit breaker on a revenue flight just before the aircraft took off. This is against FAA policy to purposely manipulate the aircraft for testing purposes on a revenue flight (a flight with paying passengers).

22. Plaintiff filed his first EEOC charge against Defendant PSA in March 2008, alleging that he had been subjected to discriminatory treatment in violation of Title VII due to his national origin, including his thick accent.

23. During Plaintiff's second upgrade attempt in March 2008, the ground school oral exam topic was changed by the instructor at the last minute from one aircraft to another. Per the Collective Bargaining Agreement, Plaintiff should have been provided seven days notice of this change. Additionally, PSA did not provide a sim syllabus with an outline of required maneuvers for the checkride and the Plaintiff was required to complete multiple malfunctions at a time instead of one at a time. Plaintiff was required to perform more simulator tasks than required of other trainees.

24. On April 6, 2008 Plaintiff Rajabi underwent his second checkride. Form 8710 was not signed by the FAA prior to the checkride. This is in direct violation of FAA

4

policy. Form 8710 must be signed before the checkride takes place or the checkride will not be valid.

25. Additionally, Plaintiff was given an unfair checkride designed to make him fail. The person evaluating his performance stated that some of the failed items were debrief items only but since Plaintiff had to do another checkride, would need to do these procedures again.

26. On April 10, 2008 Plaintiff Rajabi underwent his third checkride for upgrade to Captain. Plaintiff's instructor and simulator partner for the checkride stated, immediately prior to the checkride, that he had heard that Plaintiff had filed an EEOC complaint and was documenting and gathering information on the company. Instructor told Plaintiff that if he had known this he would not have approved Plaintiff's readiness for a checkride. During the checkride, PSA failed to provide a First Officer for the checkride whose name appears on the Pilot's System Seniority List and the Plaintiff was subjected to a 2.9 hour checkride without a break. Plaintiff was asked to perform more tasks for which he had not been trained and held to a different standard than other trainees. Plaintiff was presented with a hostile work environment in the checkride session.

27. On April 12, 2008 Plaintiff was terminated from employment.

28. Plaintiff filed a grievance through the Airline Pilot Association (ALPA) with PSA in May 2008. Plaintiff received notification on July 16 2008 that the grievance had been deadlocked and Plaintiff requested his grievance be forwarded to PSA Pilots System Board of Adjustment for an arbitration hearing. The arbitration hearing took place on December 17 2008 and results were mailed to Plaintiff in June 2009. The System Board of Adjustment findings were not in favor of the Plaintiff.

29. On or about June 2008, Plaintiff Rajabi filed his second EEOC charge alleging that he had been discriminated against in his checkrides and in the performance of his duties and in the denial of his promotion to the Captain position. The Charge also alleged that Defendant engaged in a part of a pattern and practice of discrimination against persons on non-American national origin and was discriminating against him in retaliation for filing his first EEOC charge.

30. Other instances of where Plaintiff Rajabi was treated discriminately include Defendant PSA stating in a letter to the FAA that Plaintiff had been in the simulator for four hours when in actual fact the Plaintiff had been in the simulator for one hour. Additionally, Defendant PSA stated in Plaintiff's training records that he failed a simulator ride in 2005. The record should have stated that the checkride was discontinued rather than a failed checkride. Also, Defendant PSA has treated Plaintiff unfairly by giving Plaintiff less hours to practice before a checkride than other employees.

5

31. Less than ninety days before the filing of this complaint Plaintiff received a right to sue letter on his EEOC charges.

32. Defendants' actions constitute harassment and discrimination within the meaning of California public policy, Title VII of the Civil Rights Act of 1964.

33. Plaintiff has suffered emotional distress, with resulting physical manifestations, caused by the hostile work environment and wrongful termination of employment.

34. In all four discriminating check ride environments provided by PSA, Plaintiff has never received an equal opportunity to upgrade even though he has been signed off three times by PSA Instructors to take the captain upgrade checkrides without any problems.

35. PSA Airlines simply acted in retaliation for complaint submitted by Plaintiff thru the EEOC therefore planned certificate action against the Plaintiff to harm his future as an airline pilot and to terminate his employment.

36. PSA's actions have seriously damaged the Plaintiff's airman records, and future career of employment as a pilot.

37. Plaintiff has lost all present and future income he would have generated as a Captain for PSA or with employment as pilot for a different air carrier.

38. PSA Airlines fabricated and fraudulently planned and orchestrated termination of employment.

39. Plaintiff has suffered emotional distress, with resulting physical manifestations, caused by the hostile work environment and wrongful termination of employment.

## V. LEGAL CLAIMS

**A. PLAINTIFF FIRST CAUSE OF ACTION** – Wrongful Termination in Violation of California Public Policy against Wrongful Discharge Based on National Origin.
40. Plaintiff repeats and incorporates herein the allegations of paragraph 1 through 39 as though fully set forth below.
41. The public policy of the State of California includes the prohibition against discriminating against employees because of their national origin, in violation of the policies expressed in the *California Fair Employment and Housing Act, code 12940.*
42. In terminating Plaintiff in whole or in part because of his national origins, Defendant PSA Airlines Inc. violated the public policies of the State of California.

6

43. As a result of Defendant's acts, Plaintiff has lost compensation and benefits, and suffered emotional distress. Plaintiff is entitled to receive compensatory damages in an amount in excess of Ten Thousand Dollars ($10,000.00).
44. Defendant PSA's conduct was willful, wanton and in total disregard for the rights of Plaintiff which entitles the Plaintiff to recover punitive damages in an amount in excess of Ten Thousand Dollars ($10,000.00).
45. As a direct and proximate result of Defendant's conduct, Plaintiff has been forced to file legal action and thus is entitled to his attorney's fees and costs.

**B. PLAINTIFF'S SECOND CAUSE OF ACTION** –Wrongful Harassment and Termination in Violation of Title VII of the Civil Rights Act of 1964.
46. Plaintiff incorporates herein the allegations of paragraph 1 through 45 as though fully set forth below.
47. Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000 et. seq. includes the prohibition against discriminating against employees because of their race or in retaliation for filing EEOC charges or otherwise opposing discrimination.
48. In harassing and then terminating Plaintiff in whole or in part because of his national origin, and then terminating Plaintiff Rajabi and disciplining him in whole or in part because he filed an EEOC charge and because of his national origin, Defendant PSA violated 42 U.S.C. 2000e et.seq.
49. As a result of Defendant PSA's acts, Plaintiff has lost compensation and benefits, and suffered emotional distress. Plaintiff is entitled to receive compensatory damages in an amount in excess of Ten Thousand Dollars ($10,000.00).
50. Defendant's conduct was willful, wanton and in total disregard for the rights of Plaintiff which entitles the Plaintiff to recover punitive damages in an amount in excess of Ten Thousand Dollars ($10,000.00).
51. As a direct and proximate result of Defendant's conduct, Plaintiff has been forced to file legal action and thus is entitled to his attorney's fees and costs.

**C. PLAINTIFF'S THIRD CAUSE OF ACTION** –Intentional Infliction of Emotional Distress under Common Law. (IIED)
52. Plaintiff incorporates herein the allegations of paragraph 1 through 51 as though fully set forth below.
53. Defendant PSA Airlines's actions go beyond all possible bounds of decency, and are atrocious and utterly intolerable.
54. The actions of Defendant against Plaintiff described above were designed to inflict severe emotional distress upon Plaintiff.
55. Defendant PSA is liable to Plaintiff for the acts committed by its agents Gilliam, Harris, Christner, Kumke, Fusi, Rose and Kyle by virtue of the doctrine of Respondeat Superior.
56. Plaintiff has suffered damages from Defendants' tortious conduct, including economic, pecuniary and emotional distress damages and far more importantly the ability to work in his profession.
57. Additionally, the conduct of Defendant and its employees has been malicious, fraudulent and was designed to annihilate Plaintiff's pilot profession thus Plaintiff is entitled to punitive damages under Title VII.

7

58. As a direct and proximate result of Defendant's conduct, Plaintiff has been forced to file legal action and thus is entitled to his attorney's fees and costs.

**WHEREFORE,** Plaintiff demands a jury trial and prays that the following relief be awarded:
1. Actual, compensatory and punitive damages for Plaintiff's first cause of action, Defendant PSA Airline's violation of ***California Fair Employment and Housing Act, code 12940.***
2. Actual, compensatory and punitive damages for Plaintiff's second cause of action, violation of 42 U.S.C. 2000e et.seq.
3. Actual, compensatory and punitive damages for Plaintiff's third cause of action of Intentional Infliction of Emotional Distress (IIED) under the Common Law and/or Tort Law.
4. Costs and attorneys fees in connection with this matter.
5. Other and further relief that the Court deems just and equitable.
6. That the Court retain jurisdiction over Defendants until all remedies are determined to be in full compliance with the law.
7. Extraordinary relief with the affirmative correction of Plaintiff's training and airman records to reflect his exemplary and consistent within-standards performance as a pilot at PSA Airlines during his four years of employment.
8. Extraordinary relief with the retraction of fraudulent statements and testimony given by PSA employees to/for the Federal Aviation Administration (FAA) of the Cincinnati Flight Standard District Office and the National Transportation Safety Board (NTSB).

9. Dated this 17th day of January, 2011.

Behzad Rajabi
Address:
60 N. Anderson Ave Clovis Ca 93612
Phone Number: (559) 323-8876

8

EEOC Form 161 (11/09)  **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Behzad Rajabi<br>60 N. Anderson Ave<br>Clovis, CA 93612 | From: | Charlotte District Office<br>129 W. Trade Street<br>Suite 400<br>Charlotte, NC 28202 |
|---|---|---|---|

[ ] On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 430-2008-03450 | Anita Denise Ramos, Investigator | (704) 954-6455 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

_____
Reuben Daniels, Jr.,
District Director

OCT 2 5 2010
(Date Mailed)

Enclosures(s)

cc: Thomas C. French
Ford & Harrison, LLP
271 17th Street NW
Suite 1900
Atlanta, GA 30363

Julie Fosbinder
1307 W. Morehead Street, Suite 201
Charlotte, NC 28208